UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHELSEY DUDLEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BOISE STATE UNIVERSITY; TONY ROARK in his official and individual capacities; MANDY NELSON, in her official and individual capacities; KATE LAW, in her official and individual capacities; and DOES I-X,<br><br>　　　　Defendants. | Case No. 1:22-cv-00495-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Plaintiff Chelsey Dudley's Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion"). Dkt. 2. Dudley asks the Court to both enjoin Defendants Boise State University, Toney Roark, Mandy Nelson, and Kate Law (collectively "Defendants") from conducting a Student Conduct Hearing scheduled on December 12, 2022, and to require Defendants to follow certain procedural safeguards during a rescheduled hearing.

For the reasons set forth below, Dudley's Motion is GRANTED in PART. The Motion is granted to the extent Dudley seeks a temporary restraining order enjoining the December 12, 2022 Student Conduct Hearing. The Court will temporarily enjoin the Student Conduct Hearing scheduled for December 12, 2022, to be reset after Defendants

have had the opportunity to respond to Dudley's Motion. The Court will consider Dudley's request for a preliminary injunction only after the Motion has been fully briefed and a hearing has been held.

## II. BACKGROUND[1]

On May 7, 2022, Dudley graduated from Defendant Boise State University ("BSU") with a Bachelor of Arts in Social Work degree. Dudley was a good student while at BSU, and had no disciplinary actions during her tenure there. During her senior year at BSU, Dudley enrolled in SOCWRK 481, which is the Social Work Field Practicum II internship required of social work majors. Dudley's internship for SOCWRK 481 was with the Idaho Department of Health and Welfare ("IDHW"). In approximately April of 2021, Dudley completed the requirements of her SOCWRK 481 internship with approximately 480 hours of work at IDHW.

Following her completion of SOCWRK 481, Dudley's course instructor, Guadalupe Ayala ("Ayala") evaluated Dudley's performance with between 4 out of 5 and 5 out of 5 in nine different competencies. Because SOCWRK 481 was a "Pass/Fail" class, Ayala ultimately finalized Dudley's grade for SOCWRK 481 as a "P" for "Pass." On May 7, 2022, having met all of the course requirements, Dudley graduated and received her Bachelor of Arts in Social Work degree from BSU. On July 14, 2022, Dudley took and passed the Association of Social Work Boards ("ASWB") Bachelors Social Work Licensing Exam for licensed social workers through the Idaho Department of Occupational

---

[1] At this stage, the Court only has Dudley's version of the facts. The background information is, therefore, in accordance with her representations.

MEMORANDUM DECISION AND ORDER – 2

Licensing. On August 24, 2022, Dudley became a licensed social worker in the State of Idaho.

On November 2, 2022, Defendant Tony Roark sent Dudley a letter that stated IDHW had conveyed to him the results of an "investigation establishing beyond doubt that you accessed confidential client information within IDHW's database, information in files you had no authorization to view and in which you had no legitimate business interest." Dkt. 1, ¶ 18. The November 2, 2022 letter to Dudley further stated:

> In light of these serious, intentional, and repeated violations, your grade for SOCWRK 481 will be changed from a passing grade of 'P' to a failing grade of 'F.' As a consequence of this grade change, you have not satisfied the graduation requirements for the BSW degree, rendering your transcript invalid. You will be contacted by the Office of the Registrar under separate cover regarding actions to be taken in consequence of this fact.

*Id.* at ¶ 19.

Dudley alleges that the November 2, 2022 letter was the first correspondence she received from BSU regarding any alleged misconduct prior her to graduation from BSU. As such, Dudley's first notice about the alleged "serious, intentional, and repeated violations" was through Roark informing Dudley that he was unilaterally changing her final grade in SOCWRK 481—a class necessary for Dudley's degree—from a passing to a failing grade.

On November 3, 2022, Dudley was sent a letter from the Office of the Registrar at BSU. The November 3, 2022 letter stated, in pertinent part:

> The Registrar's Office has received and processed a grade change from Dr. Tony Roark, Interim Divisional Dean, for SOCWRK 481, Social Work Field Practicum II. The grade has been changed from a passing grade of 'P' to a failing grade of 'F.'

MEMORANDUM DECISION AND ORDER – 3

> As a consequence of this change, you no longer satisfy the graduation requirements for a Bachelor of Arts in Social Work. Thus, your degree has been rescinded. Your transcript has been updated to reflect this. The diploma you received for your BA is no longer valid and should be destroyed. Please note, the Conflict Management Certificate you earned is still valid.
>
> Any transcripts that were sent after your degree was posted will be resent with an updated copy. I have included an updated unofficial copy with this letter for your records.

*Id*. at ¶ 31.

In addition to informing the Officer of the Registrar that Roark had changed Dudley's final SOCWRK 481 grade to a failing grade, BSU sent the State of Idaho's Division of Occupational and Professional Licenses Board of Social Work Examiners a revised transcript which showed that Dudley's bachelor's degree in Social Work had been removed from her official transcript. *Id*. at ¶ 33. On November 22, 2022, Dudley received a letter from the Division of Occupational and Professional Licenses Board of Social Work Examiners stating: "We recently received a revised transcript by mail from [BSU], which shows that your bachelor's degree in Social Work has been removed from your official transcript. . . . Per Idaho Statute 54-3206, licensure in Idaho requires a degree in Social Work. Therefore, we are requesting further information on the circumstances surrounding this retraction." Dkt. 2-2, Ex. E.

In short, Dudley alleges Defendants changed her grade, rescinded her degree, and compromised her licensure, all without notifying her of the allegations against her, presenting her with any of the evidence upon which Defendants relied in making such decisions, or allowing her any opportunity to respond to the allegations.

MEMORANDUM DECISION AND ORDER – 4

On November 17, 2022, Defendant Kate Law, the Assistant Dean of Students at BSU, sent Dudley an email entitled "Incident Report Notification." Dkt. 2-2, Ex. D. Law's November 17, 2022 email stated, among other things, that BSU had received information that Dudley had violated Student Code of Conduct "Section 4/AC. Violation of University Policy and/or Law." *Id*. Law explained Dudley had purportedly violated the National Academy of Social Work code of ethics, the BSU student Professional Conduct and Professional Standards, IDHW's expectations for employees and interns, and state and federal privacy laws. *Id*. The November 17, 2022 email further stated, "**[w]hile we understand this letter may be challenging, please understand, no decision has yet been made regarding this situation. Your input is important to the process and thus I am hopeful that an open, honest discussion about this incident which may resolve it in a timely manner, both for you and the university**." *Id*. (emphasis in original). BSU thereafter set a pre-hearing date for November 29, 2022, and a Student Conduct Board hearing date for December 12, 2022.

During the pre-hearing on November 29, 2022, Law did not have any of the evidence available that BSU intended to rely upon at the Student Conduct Hearing on December 12, 2022. Further, during the pre-hearing, Law stated that Roark's decision to change Dudley's SOCWRK 481 grade from a 'P' to an 'F'—and the subsequent recission of Dudley's Bachelor of Arts in Social Work degree—were not issues to be addressed or determined at the December 12, 2022 Student Conduct Board hearing. Instead, Law conveyed BSU's position that Roark had the right to change Dudley's SOCWRK 481 degree from a 'P' to an 'F.' Law also asserted that BSU does not intend to call any

MEMORANDUM DECISION AND ORDER – 5

witnesses against Dudley, and will rely only on summaries prepared by an IDHW investigator, at the Student Conduct Board hearing. Further, Law advised Dudley that BSU is seeking Dudley's expulsion and the revocation of her degree as Student Conduct Sanctions. Since Dudley is no longer a student at BSU, such expulsion would prevent her from ever returning to BSU to achieve the degree the University apparently intends to unilaterally rescind.

University Policy 2020 governs Student Conduct Hearings. This Policy allows Dudley only three business days to review the evidence that BSU will introduce against her at the Student Conduct Hearing. In addition, University Policy 2020 does not allow Dudley to directly ask questions of any witnesses. Instead, she is required to submit her questions beforehand to the Conduct Board who will ask questions on her behalf. Dudley argues this will prevent her from rephrasing questions that are unclear or misunderstood, or from asking follow-up questions based on witness responses. University Policy 2020 also disallows Dudley from being represented by an attorney during her hearing.[2] Finally, University Policy 2020 requires Dudley to submit her witness list prior to receiving the evidence that will be used against her at the Student Conduct Hearing. Dudley contends she cannot know which witnesses she will need to call until she sees the evidence against her.

At some point, Dudley hired attorneys and engaged in negotiations with counsel for BSU. On December 5, 2022, Dudley's counsel asked BSU to postpone the Student Conduct

---

[2] While University Policy 2020 does allow Dudley to have an "advisor" present with her at the Student Conduct Hearing, the advisor is not permitted to ask questions or to make statements.

MEMORANDUM DECISION AND ORDER – 6

Hearing and to reset it only with procedural safeguards in place which would give Dudley adequate notice and an opportunity to be heard. Dkt. 2-2, Ex. A. On December 6, 2022, BSU's counsel refused, stating the "University is declining to continue the Policy 2020 conduct hearing scheduled for Monday [December] 12, 2022, and declining your request that the hearing be conducted according to the conditions outlined in your email." *Id*.

On December 7, 2022, Dudley filed the instant action and Motion.

### III. LEGAL STANDARD

A plaintiff seeking a preliminary injunction or a temporary restraining order ("TRO") must establish "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (40 that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008*))*; *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *See* Fed. R. Civ. P. 65; *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

A key difference between a TRO and a preliminary injunction is its respective duration. A TRO typically does not last for more than twenty-eight (28) days without good cause, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n. 1 (D. Or. 2018). A court may issue a TRO without a hearing and without notice to the adverse

party under certain conditions. Fed. R. Civ. P. 65(b).

## IV. DISCUSSION

The Fourteenth Amendment forbids the State from depriving "any person of life, liberty, or property without due process of law." *Goss v. Lopez*, 419 U.S. 565, 572–73. While the Constitution does not define property rights, it does set forth specific procedures that must be followed before a property right can be taken. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1975). For instance, where, as it appears here, a "person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of the [Due Process] Clause must be satisfied." *Goss*, 41 U.S. at 574 (cleaned up). At the very least, the fundamental requisite of due process of law is the opportunity to be heard. *Id*. at 579. In *Goss*, the United States Supreme Court explained:

> It would be a strange disciplinary system in an educational institution if no communication was sought by the disciplinarian with the student in an effort to inform him of his dereliction and to let him tell his side of the story in order to make sure that an injustice is not done. Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. Secrecy is not congenial to truth-seeking and self-righteousness too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and the opportunity to meet it.

*Id*. at 580 (cleaned up).

Given the severity of the allegations and punishments Defendants seek to impose upon Dudley, it appears that procedural safeguards are required before Dudley can either be forced to defend herself at the Student Conduct Hearing, or before her apparent property right in her degree and reputation can be revoked. Moreover, requiring BSU to postpone the Student Conduct Hearing while it ensures Dudley receives the process to which she is

MEMORANDUM DECISION AND ORDER – 8

due under the Constitution would not cause Defendants any injury. As a State Institution, BSU is required to comply with the Constitution, and unraveling the result of a constitutional violation, if any, would likely force BSU to incur far greater time and expense than would postponing the hearing while the preliminary injunction is adjudicated. Moreover, it appears that Dudley stands to lose her degree, her license, and her reputation as a result of rushing to a decision.

Thus, on the basis of the limited record the Court currently has before it, the Court finds that: (1) Dudley has established a likelihood of success on the merits; (2) Dudley is likely to suffer irreparable harm in the absence of a temporary restraining order[3]; (3) the balance of the equities tips in Dudley's favor; and (4) a temporary restraining order is in the public interest.[4]

Nevertheless, the Court is cognizant that it has only heard one side of the story. Defense counsel has not yet appeared, and Defendants have not had the opportunity to respond to the Motion.[5] However, a TRO is necessary because the Student Conduct Hearing is two (weekend) days away.[6] There is no time for Dudley to serve Defendants

---

[3] "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (citations omitted).

[4] It is "always in the public interest to prevent a violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

[5] The Court normally does not issue TRO's without notice to the adverse party. However, because Dudley has outlined "specific facts in . . . [her] verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition," the Court will do so in this circumstance. Fed. R. Civ. P. 65(b)(1)(A).

[6] Dudley filed her suit (and motion) on December 7, 2022. The Court, however, was in a criminal trial in Coeur d' Alene until the evening of December 8, 2022.

with this lawsuit and the Motion, or for Defendants to respond, prior to the Student Conduct Hearing.[7] However, the Court is unwilling to either second guess BSU's Policy with a preliminary injunction, or to take the extreme step of ordering a mandatory injunction requiring certain process, without first hearing from the Defense.[8] Accordingly, the Court will temporarily enjoin Defendants from holding the Student Conduct Hearing for a period of fourteen (14) days. Fed. R. Civ. P. 65(b)(2).

## V. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. The Motion (Dkt. 2) is **GRANTED in PART**. It is GRANTED to the extent Dudley seeks a TRO. The Court reserves ruling on Dudley's request for a preliminary injunction;

2. Defendants are temporarily **ENJOINED** from holding the Student Conduct hearing on December 12, 2022;

3. Dudley shall serve Defendants with her Complaint, Motion, and a copy of this Order by December 11, 2022;

---

[7] The Court issued summonses on December 8, 2022 (Dkt. 3) and, as noted above, it appears BSU's office of general counsel is aware of this situation, but it has not yet appeared in this suit.

[8] A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and "preserve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988). A mandatory injunction "orders a responsible party to take action." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). A mandatory injunction "'goes well beyond simply maintaining the status quo,'" requires a heightened burden of proof, and is "'particularly disfavored.'" *Marlyn Nutraceuticals, Inc. v. MucosPharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)).

4. On or before December 19, 2022, Defendants shall respond to the TRO portion of Dudley's Motion.

5. The Court will schedule a hearing on the TRO (via ZOOM) for December 20, 2022. After the hearing, the Court will determine whether to extend the TRO and/or outline a briefing schedule on the merits of the preliminary injunction.

DATED: December 9, 2022

_____
David C. Nye
Chief U.S. District Court Judge