Michael E. Kelly, ISB # 4351
Shannon M. Graham, ISB #10092
KELLY LAW, PLLC
137 E. 50th Street
Garden City, ID 83714
Telephone (208) 342-4300
Facsimile  (208) 342-4344
mek@kellylawidaho.com
smg@kellylawidaho.com
4100.001\Memo iot TRO

Attorneys for Defendants Boise State University, Tony Roark,
Mandy Nelson and Kate Law

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHELSEY DUDLEY,<br><br>Plaintiff,<br><br>vs.<br><br>BOISE STATE UNIVERSITY; TONY ROARK in his official and individual capacity; MANDY NELSON in her official and individual capacity; KATE LAW in her official and individual capacity; and DOES I-X,<br><br>Defendants. | Case No. 1:22-cv-495<br><br>MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

Pursuant to the Court's Memorandum Decision and Order [Dkt. 4], Defendants Boise State University (the University), Dr. Tony Roark, Mandy Nelson, and Kate Law respectfully submit[1] this Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order [Dkt. 2]. Plaintiff initiated this action on December 7, 2022. Compl. [Dkt. 1]. In her Complaint,

---

[1] In submitting this Memorandum, Defendants do not waive any defenses or denials to allegations asserted against them.

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER – 1

Plaintiff alleges that Defendants deprived her of her procedural due process rights pursuant to the United States Constitution and Idaho State Constitution with respect to two separate events: a grade change that had already been completed and a prospective Conduct Board hearing, which was scheduled to take place on December 12, 2022. *Id*. Specifically, Plaintiff alleges:

1. Violation of procedural due process rights under the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983 against Defendant Roark for converting Plaintiff's final grade in SOCWRK 481 from "pass" to "fail," *Id*. at ¶¶ 53-61;

2. Violation of procedural due process rights under the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983 against Defendant Nelson for processing Plaintiff's grade change in SOCWRK 481, *Id*. at ¶¶ 62-68;

3. Violation of Due Process Rights under the Idaho Constitution against Defendant Law for depriving Plaintiff of her procedural due process rights with regard to the prospective Conduct Board hearing, *Id*. at ¶¶ 69-84; and

4. Violation of Due Process Rights under the Idaho Constitution against all Defendants for depriving Plaintiff of her procedural due process rights with regard to prospective Conduct Board hearing, *Id*. at ¶¶ 85-89.

Upon filing her Complaint, Plaintiff subsequently moved for a temporary restraining order and/or preliminary injunction. Pl.'s Mot. TRO and/or Prelim. Inj. [Dkt. 2]. On December 9, 2012, this Court granted Plaintiff's Motion to the extent she sought a temporary restraining order (TRO) and temporarily enjoined Defendants from holding the Conduct Hearing on December 12, 2022 for a period of fourteen days. Mem. Dec. Order [Dkt. 4]. The Court further ordered Defendants to respond to the TRO portion of Plaintiff's Motion on December 19, 2020. *Id*.

Good cause does not exist to extend the TRO because Plaintiff is unlikely to succeed on the merits; Plaintiff is unlikely to suffer irreparable harm in the absence of an extended TRO, the balance of equities tips in the University's favor; and a TRO is not in the public interest.

## II. STATEMENT OF FACTS

Plaintiff was a student in the University's Bachelors in Social Work program (BSW).

Admission to the program is selective. . .

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER – 2

> The traditional academic disciplines realize their mission through scholarship and pedagogy. Social work integrates scholarship and pedagogy with experiential learning in the classroom and the field practicum for a holistic socialization of the student to the values, knowledge, and skills of ethical professional practice.
>
> . . . We measure our effectiveness to the degree by which our students are successful as alumni. . .
>
> . . .
>
> Social work students have an obligation to familiarize themselves with the values and ethics of the social work profession and the curriculum policy of the Council on Social Work Education.

Dec. Couns. iot TRO ¶ 8, Ex. G.  Admission to the program requires a notarized agreement by students to abide by the National Association of Social Worker's Code of Ethics.  Plaintiff signed said agreement on October 3, 2019. Dec. Couns. iot TRO ¶ 5, Ex. D. Plaintiff enrolled in SOCWRK 481, Social Work Field Practicum II for the 2021-2022 academic year.  The pass/fail course is a prerequisite for the BSW degree and required students to complete a certain number of internship hours in the field of social work. From August 20, 2021 through April 21, 2022, Plaintiff was an intern with the Idaho Department of Health and Welfare (IDHW).  Dec. Couns. iot TRO ¶ 3, Ex. B.  On August 29, 2021, Plaintiff agreed to abide by the policies and standards set out in the School of Social Work Field Education Manual and Student Professional Conduct and Professional Standards for Boise State's Bachelor or Master of Social Work programs so that she could remain in good standing with the BSW program. Dec. Couns. iot TRO ¶ 7, Ex. F.

During her internship at IDHW, Plaintiff accessed confidential information in the Department's case management system on the father of her children and the mother of his other child, and others with the same last name as those individuals, and that such information was not related to any cases she was handling. Dec. Couns. iot TRO ¶ 3, Ex. B. IDHW discovered this conduct after Plaintiff's internship ended. Dec. Couns. iot TRO ¶ 3, Ex. B.  The Department

considered Plaintiff's conduct, searching the confidential records of individuals personally known to her, unethical and a violation of confidentiality standards of the IDHW. Dec. Couns. iot TRO ¶ 3, Ex. B. Had the Plaintiff's conduct been discovered by IDHW during Plaintiff's internship, her internship would have been immediately terminated. Dec. Couns. iot TRO ¶ 3, Ex. B.

Because the Plaintiff's misconduct was not discovered until after her internship ended, she was able to complete the requisite hours as an intern at the Idaho Department of Health and Welfare (IDHW) and received a grade of "pass" in the course. Over the course of the internship, Plaintiff reviewed the BSW Learning Agreement which articulated activities and behavioral achievements for the practicum, including learning objectives related to the ethical use of technology. Dec. Couns. iot TRO ¶ 4, Ex. C. Plaintiff graduated on May 7, 2022 with BSW degree. Compl.[Dkt. 1], ¶ 3.

On or about September 27, 2022, Individual A left a voicemail for University Institutional Compliance and Ethics (ICE) complaining that Plaintiff improperly accessed Individual A's private casefile in the custody and control of IDHW during her SOCWRK 481 internship at IDHW. Dec. Couns. iot TRO ¶ 3, Ex. B at 21.[2] Individual A shares a child with Individual B who is also the father of Plaintiff's children. *Id*. University ICE forwarded the voicemail to Dr. Christian Wuthrich, Dean of Students. *Id*. The Office of the Dean of Students (ODS) initiated an investigation. *Id*. The University ODS notified Dr. Tony Roark, Interim Divisional Dean of the School of Social Work of Individual A's Complaint. *Id*.

---

[2] Counsel for Defendants have redacted the names of persons listed in Dec. Couns. iot TRO ¶ 3, Ex. B that are not relevant to Plaintiff's Motion for injunctive relief in order to protect their privacy. To the extent said persons are relevant to the facts of the underlying Conduct Board hearing, the names of "Individual A" and "Individual B" are redacted in the colors blue and green respectively. Third parties are redacted in yellow. To effect the same purpose, links in said document have also been disabled.

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER – 4

On October 17, 2022, Dr. Roark confirmed the results of IDHW's investigation into whether Plaintiff improperly accessed the casefiles of Individuals A and B with Mike Dixon, Child Welfare Chief, Division of Family and Community Services, IDHW. Dec. Couns. iot TRO ¶ 6, Ex. E.   Mr. Dixon responded that IDHW was certain Plaintiff improperly accessed said casefiles. *Id*. Mr. Dixon added that although IDHW did not discover the breach until after Plaintiff's internship concluded, IDHW notified the Idaho Division of Occupational and Professional Licenses of the breach, in addition to notifying Plaintiff that she would not be considered for employment at IDHW due to the discovered misconduct. *Id*. Mr. Dixon provided an affidavit stating the same on December 1, 2022. Dec. Couns. iot TRO ¶ 3, Ex. B at 64-66.

On November 2, 2022, Dr. Tony Roark notified Plaintiff via correspondence that

> [t]he School of Social Work has been made aware of actionable events that occurred in the course of your Spring 2022 clinical internship for SOCWRK 481, Social Work Field Practicum II. Specifically, the Idaho Department of Health and Welfare (IDHW) has conveyed the results of an investigation establishing beyond doubt that you accessed confidential client information within IDHW's database, information in files you had no authorization to view and in which you had no legitimate business interest. The date, time, and file ID of each viewing was recorded in IDHW's system and subsequently documented by IDHW's IT department. These acts could not have been accidental, and I am aware that you were notified of IDHW's having discovered and documented your conduct of improperly accessing this client information
>
> Each incident of accessing such information was in violation of the School's field requirements, the NASW Code of Ethics, the Student Professional Conduct and Professional Standards, Boise State's Student Code of Conduct, IDHW's expectations for employees and interns, and state and federal privacy laws.
>
> In light of these serious, intentional, and repeated violations, your grade for SOCWRK 481 will be changed from a passing grade of 'P' to a failing grade of 'F'. As a consequence of this grade change, you have not satisfied the graduation requirements for the BSW degree, rendering your transcript invalid. You will be contacted by the Office of the Registrar under separate cover regarding actions to be taken in consequence of this fact.

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER – 5

> **You may appeal this decision and action by following University Policy 3130, Grade Appeals.** Additionally, the matter has been referred to the Office of the Dean of Students for possible discipline under University Policy 2020. You will be notified shortly by the Office of the Dean of Students as to any charges to be brought pursuant to Policy 2020 and the process related to those charges.

*Id*. at 13 (emphasis added). Although Plaintiff's counsel indicated a wish to appeal the decision in correspondence with the University, Plaintiff has not submitted a written appeal indicating grounds for appeal and supporting evidence, despite requests from the University that she do so. Thus, Plaintiff chose not to appeal the decision.

On November 10, 2022, Ms. Law alerted Plaintiff that the University received documentation that Plaintiff may have violated the University Student Code of Conduct and that the incident would be referred to the Conduct Hearing Board for hearing on December 12, 2022 in accordance with University Policy 2020. *Id*. 10. In the same letter, Ms. Law stated that the information reported indicates that Plaintiff may have violated Section 4/AC, Violation of University Policy and/or Law. *Id*. She specifically described the allegations as follows:

> [T]he Idaho Department of Health and Welfare (IDHW), through an investigation, concluded you accessed confidential client information within IDHW's database, reviewing information in files you had no authorization to view and in which you had no legitimate business interest. The date, time, and file ID of each viewing was recorded in IDHW's system and subsequently documented by IDHW's IT department. Accessing confidential information was found to be in violation of the School of Social Work's field requirements, the NASW Code of Ethics, the Student Professional Conduct and Professional Standards, and IDHW's expectations for employees and interns, and state and federal privacy laws, the result of which may violate the student code of conduct -specifically University Policy and or Law.

*Id*. In subsequent correspondence, Ms. Law scheduled and held a pre-hearing meeting with Plaintiff on November 29, 2022. *Id*. at 7.

On December 7, 2022, pursuant to University Policy 2020(6)(B)(2)(c), *see* Dec. Couns. iot TRO ¶ 9, Ex. H at 25, Ms. Law forwarded an email containing a link to the information packet for Plaintiff's hearing scheduled for December 12, 2022. Dec. Couns. iot TRO ¶ 2, Ex. A. A half hour later, pursuant to Plaintiff's request, Ms. Law forwarded a downloadable information packet to Plaintiff. Dec. Couns. iot TRO ¶ 3, Ex. B. The information packet included a copy of the Hearing Checklist, which had been reviewed with Plaintiff at the pre-hearing meeting on November 29, 2022. *Id*. at 5-6. Pursuant to Policy 2020(6)(B)(2)(d)(i), *see* Dec. Couns. iot TRO ¶ 9, Ex. H at 25, the hearing will proceed according to the process outlined on the Hearing Checklist. The Hearing Checklist provides that at the Conduct Board Hearing, the Complaint and Respondent may present their own information and question their own witnesses. Dec. Couns. iot TRO ¶ 3, Ex. B at 5-6. It further provides that the Complainant and Respondent may submit questions to the Chairperson/Officer of the Conduct Board to ask of the opposing party and their witnesses – the questions are not required to be submitted prior to the hearing. *Id*.

The information packet provided to Plaintiff on December 7, 2022, contained all of the evidence the University was relying on in support of the charges. The packet also contains correspondence from Raymond J. Mullenax, LCSW, Direct of Field Education, to "Whom It May Concern." *Id*. at 67-68. In the correspondence, he specifically identifies National Association of Social Workers Code of Ethics sections that Plaintiff is alleged to have violated. *Id*. The information packet further includes highlighted excerpts from the School of Social Work BSW and MSW Field Manual, Rev. 9/30/2019 that Plaintiff is alleged to have violated. *Id*. 70-92.

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER – 7

## III. LEGAL STANDARD

The purpose of a TRO is to maintain the status quo until such time as a more considered decision can be made. *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439, 94 S. Ct. 1113, 1124 (1974). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

## IV. ARGUMENT

**A. Plaintiff is unlikely to succeed on the merits.**

Good cause does not exist to extend the TRO because Plaintiff has not demonstrated that she is likely to succeed on the merits. Plaintiff brings this procedural due process action pursuant to a property interest in relation to two events: the academic decision[3] of reassigning and processing of Plaintiff's SOCWRK 481 grade from "pass" to "fail" and a possible disciplinary finding to be made following the prospective hearing which carries the possible sanctions of degree revocation and expulsion from the University. As the academic decision has already been made and implemented, the TRO only applies to the latter which Plaintiff brought pursuant to Article 1, Section 13 of the Idaho Constitution. Compl. [Dkt. 1] ¶¶ 69-84, 89. While Plaintiff acknowledges that the scope of Idaho Const. art. 1, § 13, the due process clause, is not necessarily the same as that of the U.S. Const. amend. XIV, *see Cootz v. State*, 117 Idaho 38, 40,

---

[3] Assuming *arguendo*, Plaintiff has a property interest for purposes of protection under the Fourteenth Amendment in her SOCWRK 81 grade, academic decisions require only a careful and deliberate review-and-appeal process. *See* Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 82, 90, 98 S. Ct. 948, 55 L. Ed. 2d 124 (1978). As demonstrated by the record, the University's decision was careful and deliberate and Plaintiff was offered an appeal process for challenging that decision.

MEMORANDUM IN OPPOSITION TO TEMPORARY RESTRAINING ORDER – 8

785 P.2d 163, 165 (1989), she does not offer any further analysis on procedural due process claims under the Idaho Constitution or how the process being offered by the University in the form of a Conduct Board hearing is insufficient pursuant to the Idaho Constitution. As such, Plaintiff fails to meet her burden in demonstrating that she is likely to succeed on the merits.

An extension of the TRO in this matter would serve to further delay and prevent due process from occurring, and should not be entertained. Should this Court evaluate an extension of the current TRO as if Plaintiff alleged that prospective Conduct Board hearing violated her rights under the Fourteenth Amendment of the United States Constitution, Plaintiff is still unlikely to succeed on the merits.

To state a procedural due process claim, a plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The Constitution does not define property interests protected by the Fourteenth Amendment; rather they are defined by independent sources, such as state statutes or rules entitling citizens to certain benefits. *See Goss v. Lopez*, 419 U.S. 565, 572–73 (1975), citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Reference to "an independent source such as state law" will determine whether a "legitimate claim of entitlement" to the benefit exists. *Roth*, 408 U.S. at 576–77. The Ninth Circuit has not recognized a generalized property interest in higher education. Instead, it makes a state-specific inquiry to determine whether a property interest exists once a plaintiff meets her burden of identifying a cognizable property interest based on a source of law independent of the Constitution. *See Doe v. White*, 859 F. App'x 76, 77 (9th Cir. 2021) *cert. denied*, 212 L. Ed. 2d 403, 142 S. Ct. 1414 (2022) (Because the Due Process Clause does not create freestanding property interests, a plaintiff must identify a cognizable property interest

based on an independent source such as state law. We, therefore, examine California law to decide whether Doe had a clearly established property interest in her continued attendance at a state university.)(internal quotations and citations omitted); *Wynar v. Douglas Cty. Sch. Dist.*, 728 F.3d 1062, 1072 (9th Cir. 2013)(Under Nevada law, plaintiff had a property interest in his public education and was therefore entitled to due process before he could be suspended.).

Nor is there a property interest in a passing grade. See <u>Eric Njokom v. El Camino Cmty. Dist. Coll.</u>, No. CV 20-9287-CAS (KS), 2020 WL 6438415, at *7 (C.D. Cal. Oct. 14, 2020), <u>appeal dismissed sub nom.</u> <u>Njokom v. El Camino Cmty. Coll. Dist.</u>, No. 20-56153, 2020 WL 8373362 (9th Cir. Nov. 19, 2020) finding a lack of a protected liberty or property interest implicated by a failing grade, and even if there was such an interest, a careful and deliberate review followed by an appeal process satisfies due process.

Here, Plaintiff fails to set forth a property interest defined by state law or other source independent of the Constitution. Although Plaintiff alleges a property interest in her degree, she insufficiently defines the interest by reference to caselaw outside of the Ninth Circuit. *See* Pl.'s Mem. iso Mot. TRO and/or Prelim. Inj. [Dkt. 2-1] at 10. This is insufficient to succeed on a procedural due process claim.

Assuming *arguendo* that Plaintiff had a property interest in her degree, the remaining question becomes how much process is due the student. Plaintiff does not dispute that she is being provided a process for challenging the decision, only that she is entitled to more "formal" procedures. Plaintiff specifically requests that the hearing be set for a new date, that Defendants specifically identify that the policies she is alleged to have violated, allow her to question witnesses, require Defendants to present IDHW investigators as witnesses, and to allow an

attorney to present her Defense. Some of these demands exceed due process jurisprudence in the context of academic decisions.

Additionally, Plaintiff's demands are largely being met already. The hearing has already been delayed at least two weeks as a function of the present TRO. Defendants specifically identified the policies that Plaintiff is alleged to have violated in the information packet provided to Plaintiff on December 7, 2022 and provided Plaintiff with the evidence being relied on. *See* Dec. Couns. iot TRO ¶ 3, Ex. B at 67-92. Plaintiff is allowed to question witnesses. *Id*. at 5-6. Plaintiff cites no authority for the proposition that she is entitled to dictate the presentation of a complainant's case by demanding certain witnesses are presented or that she is entitled to have counsel to speak on her behalf. Nevertheless, the University's process already provides that Plaintiff may call and directly question her own witnesses and have an attorney that serves as her advisor during the hearing. *Id*.

Rights of students in a potential disciplinary action are not co-extensive with the rights of parties in criminal, or even civil, trials. In order to determine whether the procedural protections provided are sufficient the Ninth Circuit balances the following factors: (1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest. *Kashem v. Barr*, 941 F.3d 358, 364, 377 (9th Cir. 2019); *see Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Plaintiff provides no analysis on factors (2) and (3) and fails to demonstrate how she would be prejudiced without her additional requested requirements.

In the prospective hearing before the Conduct Board, there does not exist a risk of erroneous deprivation. The Defendants and the Conduct Board do not have an interest in revoking degrees. At the Conduct Board hearing, Plaintiff will have the opportunity to explain

her version of events and argue for exoneration or leniency before an impartial panel. Plaintiff's requested additional procedural requirements would create delay, expense and disruption without significantly increasing the reliability and fairness of the disciplinary process.

Plaintiff requests to engage in direct cross-examination and have an attorney present her case is outweighed by the administrative cost on the school to set parameters for appropriate cross examination, train Board chairs to make decisions on those rules, and create a more adversarial system. *See Nash v. Auburn* Univ., 812 F.2d 655, 664 (11th Cir.1987); *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993). Plaintiff is already entitled to indirect cross-examination by posing questions through the Chair and the board is able question witnesses itself.  Such procedures have been held sufficient in providing due process in school disciplinary settings.  *Id.* Further, this current safeguard works in Plaintiff's favor as well. The Complainant is not entitled to directly cross examine Plaintiff or her witnesses. Plaintiff is also already entitled to seek advice from her counsel during the Hearing.

Plaintiff's request to require Defendants to present specific witnesses is without support and Plaintiff provides no mechanism by which the University can compel the attendance or testimony of specific persons.  Plaintiff is already entitled to present her own witnesses and subject them to direct examination. Here, Plaintiff is unlikely to succeed on the merits that the pending Conduct Board hearing requires more "formal" procedures.

**B. Plaintiff is unlikely to suffer irreparable harm in the absence of an extended TRO.**

Plaintiff has not established that she has a protected property interest. She has further failed to establish that an erroneous deprivation will occur at the Conduct Board hearing as provided for in the Hearing checklist, or that the value of any additional procedural requirements outweighs the University's interest in conducting the subject hearing.  Accordingly, she is

unlikely to suffer irreparable harm in the absence of an extended TRO. In fact, an extension of the TRO would serve to delay due process from taking place.

**C. The balance of equities tips in the University's favor.**

A court must "balance the interests of all parties and weigh the damage to each" in determining the balance of the equities. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Because, Plaintiff is unlikely to succeed on the merits of her claim or suffer irreparable harm in the absence of an extended TRO as articulated in Sections IV(A) and IV(B) above, she has failed to demonstrate any hardship tipping the balance in her favor. The University on the other hand has a vested interest in regulating the conduct of its students in field practicums or internships and protecting the value of the degrees it awards, and in determining whether a student has demonstrated the competencies necessary for the conferral of a degree. Accordingly, the balance of the equities favors Defendants.

**D. A TRO is not in the public interest.**

"The public interest inquiry primarily addresses impact on non-parties rather than parties. It embodies the Supreme Court's direction that[,] in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Bernhardt v. Los Angeles Cnty*., 339 F.3d 920, 931-32 (9th Cir. 2003) (internal quotation marks and citation omitted) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982)). An extended TRO would injure public interest. Plaintiff is alleged to engaged in unethical practices during her social work internship. Social workers must be licensed to practice and professional licenses are generally required when the public is at a disadvantage in evaluating the quality of a service they expect to receive. In order to be considered for a license, an accrediting institution must represent that a

professional candidate is worthy of a license by bestowing a degree.  Here, Defendants are attempting to uphold its duty by conducting a hearing into allegations of misconduct.

## V. CONCLUSION

The TRO in this case is delaying, rather than ensuring due process.  For this reason, and for the reasons stated above, Defendants respectfully request that this Court find that no good cause exists to extend the TRO.

DATED this 19th day of December, 2022.

                                            KELLY LAW, PLLC


                                    By:  /s/ Michael E. Kelly
                                            Michael E. Kelly, Of the Firm
                                            Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of December, 2022, I served a true and correct copy of the foregoing by delivering the same to each of the following individuals, by the method indicated below, addressed as follows:

| | |
|---|---|
| Jeremiah M. Hudson<br>Christopher F. Brown<br>Fisher Hudson Shallat<br>950 W. Bannock St., Ste. 630<br>Boise, ID 83702<br>Telephone: (208) 345-7000<br>Facsimile: (208) 514-1900<br>*Attorneys for Plaintiff* | ✔ Electronic mail/ECF<br>jeremiah@fisherhudson.com<br>chris@fisherhudson.com |

/s/ Tracy Siltman
Tracy Siltman