UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHELSEY DUDLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>BOISE STATE UNIVERSITY; TONY ROARK in his official and individual capacities; MANDY NELSON, in her official and individual capacities; KATE LAW, in her official and individual capacities; and DOES I-X,<br><br>    Defendants. | Case No. 1:22-cv-00495-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

On December 7, 2022, Plaintiff Chelsey Dudley filed the instant Complaint. Dkt. 1. Simultaneously, Dudley filed a Motion for Temporary Restraining Order and/or Preliminary Injunction ("TRO Motion"). Dkt. 2. In her TRO Motion, Dudley asked the Court for two things: first, to enjoin Defendants Boise State University, Tony Roark, Mandy Nelson, and Kate Law (collectively "Defendants") from conducting a Student Conduct Hearing scheduled for December 12, 2022; and second, to require Defendants to follow certain procedural safeguards during any rescheduled hearing.[1]

---

[1] Dudley also asked the Court to reinstate her degree pending the outcome of these proceedings. As will be explained below, the parties—and the Court—originally merged these two issues into one.

On December 9, 2022, the Court issued a decision granting, in part, Dudley's TRO Motion. Dkt. 4.[2] The Court's relevant findings were as follows:

> Given the severity of the allegations and punishments Defendants seek to impose upon Dudley, it appears that procedural safeguards are required before Dudley can either be forced to defend herself at the Student Conduct Hearing, or before her apparent property right in her degree and reputation can be revoked. Moreover, requiring BSU to postpone the Student Conduct Hearing while it ensures Dudley receives the process to which she is due under the Constitution would not cause Defendants any injury. As a State Institution, BSU is required to comply with the Constitution, and unraveling the result of a constitutional violation, if any, would likely force BSU to incur far greater time and expense than would postponing the hearing while the preliminary injunction is adjudicated. Moreover, it appears that Dudley stands to lose her degree, her license, and her reputation as a result of rushing to a decision.
>
> Thus, on the basis of the limited record the Court currently has before it, the Court finds that: (1) Dudley has established a likelihood of success on the merits; (2) Dudley is likely to suffer irreparable harm in the absence of a temporary restraining order; (3) the balance of the equities tips in Dudley's favor; and (4) a temporary restraining order is in the public interest.
>
> Nevertheless, the Court is cognizant that it has only heard one side of the story. Defense counsel has not yet appeared, and Defendants have not had the opportunity to respond to the Motion. However, a TRO is necessary because the Student Conduct Hearing is two (weekend) days away. There is no time for Dudley to serve Defendants with this lawsuit and the Motion, or for Defendants to respond, prior to the Student Conduct Hearing. However, the Court is unwilling to either second guess BSU's Policy with a preliminary injunction, or to take the extreme step of ordering a mandatory injunction requiring certain process, without first hearing from the Defense. Accordingly, the Court will temporarily enjoin Defendants from holding the Student Conduct Hearing for a period of fourteen (14) days. Fed. R. Civ. P. 65(b)(2).

*Id*. at 8–10 (footnotes omitted). The Court noted that it does not normally grant TRO's without hearing from the adverse party, but, in light of the exigent circumstances and short

---

[2] The Court's ruling was limited to the issue of a TRO. It said it would "consider Dudley's request for a preliminary injunction only after the Motion has been fully briefed and a hearing has been held." Dkt. 4, at 2.

timetable, it would temporarily do so in this case. Dkt. 4, at 9 n.5.

In sum, the Court enjoined Defendants from conducting the hearing on December 12, 2022, required Dudley to serve Defendants, required Defendants to respond to Dudley's TRO Motion on or before December 19, 2022, and set a hearing (via Zoom) for December 20, 2022. *Id*. at 10–11.

Defendants dutifully filed their response (Dkt. 9) and the Court held a hearing (Dkt. 10).

Upon review, and for the reasons set forth below, the Court will not extend the TRO as it relates to the hearing, nor will it grant the TRO as it relates to Dudley's grade or degree.

## II. BACKGROUND

On May 7, 2022, Dudley graduated from Defendant Boise State University ("BSU") with a Bachelor of Arts in Social Work degree. As part of her degree, Dudley completed an internship with the Idaho Department of Health and Welfare ("IDHW"). Upon completion of the internship, Dudley received a passing grade and, in turn, her bachelor's degree in Social Work.

On July 14, 2022, Dudley took and passed her Social Work Licensing Exam through the Idaho Department of Occupational Licensing. On August 24, 2022, Dudley became a licensed social worker in the State of Idaho.

On November 2, 2022, Defendant Tony Roark sent Dudley a letter stating IDHW had conveyed to him the results of an "investigation establishing beyond doubt that [Dudley] accessed confidential client information within IDHW's database . . ." during her

time with them that she did not have authorization to view. Dkt. 2-2, at 8.[3]

Roark then informed Dudley that, as a result of IDHW's allegations, her passing grade for her internship would be changed to a failing grade. *Id*. Roark then informed her that, as a result of the grade change, her transcript was invalid and that she would be contacted by the Office of the Registrar for further action. *Id*. He also explained that, pursuant to University Policy 3130, she could appeal his decision to change her grade. *Id*. Finally, Roark informed Dudley that the entire matter had been referred to the Dean of Students for possible disciplinary action under University Policy 2020. *Id*.

As Roark noted, Defendant Mandy Nelson from BSU's Office of the Registrar sent Dudley a letter the following day stating that, in light of the grade change, her degree was "rescinded" and her diploma was "no longer valid." Dkt. 2-2, at 10.

BSU subsequently sent the State of Idaho's Division of Occupational and Professional Licenses Board of Social Work Examiners a revised transcript showing that Dudley's bachelor's degree in Social Work had been removed from her official transcript.

On November 17, 2022, Defendant Kate Law, Assistant Dean of Students at BSU, sent Dudley an email entitled "Incident Report Notification." Dkt. 2-2, 12–13. It stated, among other things, that BSU had received information that Dudley had purportedly

---

[3] Though its nature is not material to this analysis, the confidential information Dudley accessed was related to the father of her children—who she is no longer with—and the mother of his other child (i.e. her ex-partner and *his* new partner). The only reason this all came to light was because Dudley texted her ex-partner's new partner and said certain things she could only have known about had she accessed the confidential files at IDHW. That individual then contacted IDHW and BSU's Institutional Compliance and Ethics department and raised her concerns. IDHW performed an internal investigation and informed Defendants of their findings. This background is only relevant because, and explained below, it shows that Dudley has been apprised of the allegations against her.

MEMORANDUM DECISION AND ORDER – 4

violated the Student Code of Conduct, the National Academy of Social Work code of ethics, the BSU student Professional Conduct and Professional Standards, IDHW's expectations for employees and interns, and state and federal privacy laws. *Id*. The email said BSU was referring these allegations to the Conduct Hearing Board for review. *Id*. "[P]lease understand," Law wrote, "no decision has yet been made regarding this situation. Your input is important to the process and thus I am hopeful that an open, honest discussion about this incident which [sic] may resolve it in a timely manner, both for you and the university." *Id*. BSU set a pre-hearing date for November 29, 2022, and a Student Conduct Board hearing date for December 12, 2022.

On November 22, 2022, Dudley received a letter from the Division of Occupational and Professional Licenses Board of Social Work Examiners stating: "We recently received a revised transcript by mail from [BSU], which shows that your bachelor's degree in Social Work has been removed from your official transcript . . . . Per Idaho Statute 54-3206, licensure in Idaho requires a degree in Social Work. Therefore, we are requesting further information on the circumstances surrounding this retraction." Dkt. 2-2, at 15.

Dudley hired attorneys and engaged in negotiations with counsel for BSU. The record does not contain an earlier email from BSU which appears to have explained the process and options Dudley could pursue regarding her grade change as well as the student conduct hearing. The record does, however, contain a December 5, 2022, email from Dudley's counsel to BSU in which they assert she will not engage in the appeal process for her grade change because she understood that the first appeal level was the professor who changed the grade in the first place and he would not be an "unbiased decision-maker."

MEMORANDUM DECISION AND ORDER – 5

Dkt. 2-2, at 5. In the same email, Dudley requested that BSU postpone the Student Conduct Hearing and reset it with adequate procedural safeguards that would give Dudley notice and an opportunity to be heard. *Id*. at 5–6.

On December 6, 2022, BSU's counsel responded. She first noted that University Policy 3130 required Dudley to meet with the original professor if she wished to appeal the decision to change her grade. Nevertheless, in light of Dudley's stated hesitation, BSU's counsel offered to move Dudley to subsequent steps in the appeal process. The Court is not in possession of any follow-up emails but knows the appeal process did not occur. BSU's counsel then stated it was "declining to continue the Policy 2020 conduct hearing scheduled for Monday [December] 12, 2022, and declining your request that the hearing be conducted according to the conditions outlined in your email." *Id*.

On December 7, 2022, Dudley filed the instant lawsuit and motion for TRO.

As noted, the Court granted the TRO and enjoined Defendants from holding the conduct hearing for a period of 14 days. It did not rule, in any fashion, on Dudley's requests regarding her grade change.

The Court then held its own hearing on whether to extend the TRO on December 20, 2022, and took the issue under advisement.

### III. LEGAL STANDARD

The Court reviews whether to extend the TRO under the same standard it did initially. A plaintiff seeking a preliminary injunction, or a temporary restraining order ("TRO") must establish "(1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of

equities tips in his favor; and (4) that an injunction is in the public interest." *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008*)*); *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *See* Fed. R. Civ. P. 65; *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

## IV. DISCUSSION

As noted, *see infra* note 1, there has been confusion about the nature and purpose of the various disciplinary proceedings at BSU. It appeared to the Court at first blush that the Student Conduct Hearing (originally scheduled for December 12, 2022) was related to Defendant Roark's decision to change Dudley's grade and Defendant Nelson's decision to rescind her degree. The Court was under the impression that the Student Conduct Hearing was intended to review the actions of those BSU decisionmakers, and so may have constituted some due process for Dudley. However, upon further review of the record and counsel's comments at oral argument, the Court believes there are some nuances it previously overlooked.

Both actions—the grade change / diploma recission and the disciplinary hearing—stem from Dudley's actions during her internship at IDHW. Critically, however, they were separate procedures. Roark changed Dudley's grade and, as a result, the registrar rescinded her diploma. That is the first bucket or category of adverse action Dudley seeks to enjoin.

Roark then "referred" the matter to the Office of the Dean of Students for possible discipline. This second bucket or category of adverse action is what precipitated the Student Conduct Hearing.

The distinction is critical because Dudley challenges Defendants' due process procedures in both circumstances. Again, these two "proceedings" work in tandem and are on essentially parallel tracks, but because they employed separate procedures, the Court will analyze them separately.

### A. Procedural Due Process

The Fourteenth Amendment forbids the State from depriving "any person of life, liberty, or property without due process of law." *Goss v. Lopez*, 419 U.S. 565, 572–73 (1975). To state a procedural due process claim, a plaintiff must allege: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The Constitution does not define property interests protected by the Fourteenth Amendment; rather they are defined by independent sources, such as state statutes or rules entitling citizens to certain benefits. *See Goss*, 419 U.S. at 572–73 (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) (holding that, though the Constitution does not define property rights, it does set forth specific procedures that must be followed before a property right can be taken)).

Reference to "an independent source such as state law" will determine whether a "legitimate claim of entitlement" to the benefit exists. *Roth,* 408 U.S. at 576–77. The Ninth Circuit has not recognized a generalized property interest in higher education. Instead, it

makes a state-specific inquiry to determine whether a property interest exists once a plaintiff meets her burden of identifying a cognizable property interest based on a source of law independent of the Constitution. *See Doe v. White*, 859 F. App'x 76, 77 (9th Cir. 2021) ("Because the Due Process Clause does not create freestanding property interests, a plaintiff must identify a cognizable property interest based on an independent source such as state law. We, therefore, examine California law to decide whether Doe had a clearly established property interest in her continued attendance at a state university.") (cleaned up); *Wynar v. Douglas County. Sch. Dist.*, 728 F.3d 1062, 1072 (9th Cir. 2013) (holding that, under Nevada law, plaintiff had a property interest in his public education and was, therefore, entitled to due process before he could be suspended.).

1. *Protected Property Interest*

First, the Court must address whether Dudley had a protected property interest entitling her to due process. Defendants contend Dudley fails, at the outset, to show she has a property interest in any of the items at issue (her grade, transcript, degree, and enrollment) because the only cases she cites for that proposition come from outside the Ninth Circuit, not Idaho statutes as the Ninth Circuit requires.[4] At the hearing, Dudley countered that Idaho Code Sections 33-4005 and 33-3006 vest her with a property interest. The Court disagrees.

These code sections relate to the management of state universities and the duties of their boards of trustees. They make no mention of property rights or due process.

---

[4] Notably, Dudley has not had a chance to respond to this allegation in writing.

Interpreting them to vest students with a protected property interest in education, as Dudley asks the Court to do, would impermissibly stretch their plain meaning.

That said, the Court understands Dudley's predicament. Dudley did not cite any Idaho cases because it appears that none exist. The Court likewise cannot find any caselaw from Idaho state courts on this topic. It appears to be an open question.

Caselaw from the federal district courts is also scant. In 2006, District Judge Edward J. Lodge *implied* high school students had a property right in their education but did not cite any state law for that proposition and ultimately found the matter irrelevant because the school did not take any adverse action against the student at issue. *Howard v. Yakovac*, 2006 WL 1207615, at *7 (D. Idaho May 2, 2006).

In 2017, District Judge B. Lynn Winmill dismissed a claim based upon the argument that the plaintiff had a property interest in his education at Idaho State University because the student could not "point to any state law creating a property interest in his education or scholarship." *Duffin v. Idaho State Univ.,* 2017 WL 6543873, at *5 (D. Idaho Dec. 21, 2017).

In 2018, Magistrate Judge Candy W. Dale determined that students do have a property right in a public education and that the state "may not take away a student's property interest without meeting the requirements of due process." *B.W. through Wann v. Vallivue Sch. Dist. No. 139*, 2018 WL 2448448, at *9 (D. Idaho May 31, 2018). That case, however, dealt with a student's participation in interscholastic athletics and, ultimately, Judge Dale determined the school district followed correct procedures—including written notice and an opportunity to appeal—and did not violate the student's due process rights.

MEMORANDUM DECISION AND ORDER – 10

None of these cases, however, deal directly with a university grade, transcript, or diploma/degree (Dudley's first area of concern), nor do they deal with university enrollment itself (Dudley's second area of concern).[5]

On the one hand, the Court is persuaded by Defendants' argument that Dudley has failed to show she has a protected property interest. There is insufficient authority from the state courts and legislature for this Court to find conclusively that Dudley has a property interest in her grade, transcript, degree, or education. Federal caselaw *seems* to suggest that she does, but the question turns on state law. *See Roth,* 408 U.S. at 576–77.

On the other hand, BSU is in the contradictory position of arguing that there is no property interest at stake while simultaneously maintaining a handbook of policies and procedures designed to protect such an interest—whether couched as a "property" interest or otherwise. This paradox may be why Defendants assume *arguendo* that Dudley has a protected property interest and proceed to argue that the procedures they have in place are constitutionally adequate. The Court will take a similar approach today. Because a full analysis of this open question of state law would be necessarily speculative, the Court will assume, without formally deciding, that Dudley's interests here are entitled to due process

---

[5] In *Goss,* 419 U.S. at 565, the United States Supreme Court held that due process requires, in connection with the suspension of a student from public school for disciplinary reasons, "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.,* at 581. That said, just because Due Process is required does not mean a property interest exists. *See, e.g., Ryan v. California Interscholastic Fed'n-San Diego Section*, 114 Cal. Rptr. 2d 798, 811 (2001) ("An entitlement, like the state right to a free public education, does not necessarily create a property interest in each of its constituent parts."). In short, this area of law is difficult to parse, and the Court is not prepared to make a formal ruling at this time on the limited record before it regarding whether Dudley has a property interest in some, or all, of the aspects of her university education.

MEMORANDUM DECISION AND ORDER – 11

protection.

### 2. Adequate Process

It is undisputed that BSU, a state instrumentality, has taken steps to deprive Dudley of her grade, degree, and opportunity to enroll in future classes. Thus, the next question is whether BSU has afforded Dudley the process due her under the Constitution. The Court will analyze the two categories of discipline separately.

#### a. Grade / Degree

Dudley argues Defendants violated University Policy 3180 when Roark changed her grade because he was not her professor.

The full text of University Policy 3180 is not in the record. From what it has been presented with, it appears Defendants *may* have circumvented certain provisions within the policy. The Court emphasizes may, however, because there could be other applicable sections within University Policy 3180, or other policy sections, that allow for the course of action Defendants took. The Court simply does not know.

Furthermore, even assuming Defendants violated their own policies or procedures, that would not necessarily mean that they violated Dudley's due process rights. *See, e.g., Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82, 90 (1978) (holding that academic decisions require only a careful and deliberate review-and-appeal process). Regardless, these arguments are fodder for appeal within the University procedures. Dudley could raise this issue with Defendants and see where it leads. The problem is that she has thus far refused to engage in the process offered.

In his original email, Roark explained that Dudley could appeal the decision

regarding her grade change by following University Policy 3130. Dkt. 2-2, at 8. BSU's counsel reiterated as much. *Id*. at 5. Critically, when Dudley expressed concern with the appeal process because of who would hear the appeal, BSU's counsel said the University would allow her to essentially "jump over" that step. To date she has still refused.

The Court is not implying that Defendant's appeal process is a prerequisite to filing a lawsuit, that it is a quasi-exhaustion requirement, or that Dudley's case is not yet ripe. It is, however, concerned that Dudley is aggravating the problem she complains of. She asks the Court to find that she has been denied due process while simultaneously dodging BSU's efforts to initiate process of any kind. It is pure speculation at this point what would happen if Dudley actually appealed. Maybe a higher authority would reverse the grade change decision. Maybe not.[6] But the Court cannot say at this stage that Dudley has shown a likelihood of success on her due process claim as it relates to the grade change / diploma recission when the process is, frankly, ongoing. In short, Dudley wants the Court to summarily decide that what has already occurred violated her due process. But those decisions, by all accounts, are not final.

The Court recognizes the precarious position this places Dudley in. Presumably this is why she asked for the Court to reinstate her grade and degree until she is given her due process. The Court is sympathetic to Dudley's plight. However, for the reasons just explained, it will not grant her request.

---

[6] The Court wishes to make clear that it takes no position on what the outcome should be if Dudley chooses to appeal. Defendants are free to make decisions as they see fit, so long as appropriate due process is provided.

To begin, Dudley's due process is ongoing. Second, Dudley is, in part, impeding her own case. It is still unknown at this point whether any changes to Roark's decision will be made. Had she appealed, the parties might not have even got to this point (or, if they did, at least it would be clear where everyone stood). What's more, even if a formal change isn't made, Defendants might be willing to hold matters in abeyance pending the Student Conduct Hearing. As it currently sits, however, Dudley is the one precluding any formal, or informal, resolution of this matter.[7]

Further, these matters are ongoing. No formal decision has been reached. Prudence dictates that the other stakeholders, including the Idaho Department of Occupational Licensing and Dudley's current employer, wait until the administrative dispute is resolved before taking any action. The Court is aware that the Idaho Department of Occupational Licensing is not a party to this suit. Nor is Dudley's current employer. The Court cannot control what either entity choses to do. Nevertheless, the Court anticipates that they will wait to see how these matters play out within the University's administrative policies and procedures.[8]

---

[7] Dudley's primary reason for wanting her degree reinstated is to head off other potentially adverse action by the Idaho Department of Occupational Licensing and her current employer. Again, the Court is sympathetic to her plight. But reinstating her degree while she goes though the process would seem to usurp the University's processes. Similar to when a person is terminated, though there may be circumstances where the decision is held in abeyance pending review, the review usually happens after the termination. If reversed (administratively or via litigation) the person would be entitled to damages. Such could be the case here. The Court understands the domino effect at play here that might not be at play in a generic termination, but the comparison is still appropriate. Additionally, regardless of the status of her degree, either of those other organizations *could* act against her based upon the fact that these issues have arisen in the first place. As outlined below, however, the Court hopes to avoid all such scenarios by encouraging any other interested entity to wait to see how the process unfolds.

[8] Again, the Court *is not*, in any way, suggesting what action either organization should take. It is not even implying that the subject of this case requires action. It is simply counseling moderation to avoid the

For the above reasons, the Court will not grant this portion of Dudley's TRO request. She should engage in the appeals process Defendants have offered. The Court can review later whether BSU's procedures complied with due process, but only once that process has actually taken place. The Court's initial assessment, however, is that these procedures do afford Dudley the "careful and deliberate review-and-appeal process" the Supreme Court deemed sufficient under the Fourteenth Amendment in *Horowitz*. 435 U.S. at 85.

### b. Student Conduct Hearing

Dudley alleges that Defendants are violating her Due Process rights in regard to the Student Conduct Hearing and made the following requests: (1) that the hearing be set for a new date; (2) that Defendants specifically identify the policies she is alleged to have violated; (3) allow her to question witnesses; (4) require Defendants to present IDHW investigators as witnesses, and (5) allow an attorney to present her defense.

In Defendants' estimation, Dudley's requests are largely being met. Those requests not provided for under their current procedures, Defendants argue, exceed what the constitution requires.

First, the hearing has already been delayed at least two weeks as a function of the present TRO, which gave Dudley additional time to prepare.[9] Second, Defendants identified the policies Dudley is alleged to have violated in the information packet provided

---

possibility of having to "undo" potentially drastic action and afford all parties the opportunity to move through the process in a timely and systematic manner.

[9] Additionally, BSU is currently on Christmas break. Counsel for Defendants has represented that a hearing will not take place until sometime into the new year. Thus, Dudley has, in essence, received additional time to prepare.

MEMORANDUM DECISION AND ORDER – 15

to her on December 7, 2022, and provided her with the evidence they intended to rely upon.[10] Third, Dudley is allowed to question witnesses.

Defendants dispute, however, that they need to acquiesce to Dudley's fourth and fifth requests, arguing she has not provided any authority for the proposition that she can request the University bring certain witnesses or that she is entitled to have counsel speak on her behalf. Nevertheless, Defendants argue they have agreed to these demands: Dudley is allowed to call and question her own witnesses (i.e. she can call IDHW personnel if they are willing to testify) and she is allowed to have an attorney that serves as her advisor during the hearing. On these final items, Defendants also contend that turning this administrative hearing into a quasi-legal hearing is not appropriate and that they would have to train members of the panel on the law if it became akin to the adversarial system Courts utilize.

The Court agrees, at least at this initial stage. It appears that BSU's process complies with the requirements of *Goss* that the student be given notice and an explanation of the evidence against her and also provides the careful and deliberative review process *Horowitz* requires. Accordingly, the Court will not extend the TRO. The student conduct hearing should go forward. And, hearkening back to the Court's comments about proceeding in an orderly fashion, it might be worth waiting to hold the Student Conduct

---

[10] As the Court mentioned above, *see infra* note 3, the underlying facts of why Dudley was in trouble are not relevant to the Court's TRO decision today. But, the fact of the matter is, Defendants have now laid bare their plan for the Student Conduct Hearing. It appears much of this was already covered in the pre-hearing meeting, but Dudley is now in an even better position going into the hearing.

Hearing until the appeal process has run its course as it relates to the grade issue. The Court leaves the order in which to undertake these two tasks up to the parties.

## V. CONCLUSION

This case presents interesting and difficult questions. The Court's main concern, however, is that it is being asked to jump into the fray while the process is ongoing. The Court did not explicitly review the *Winter* factors above while analyzing Dudley's two areas of concern but summarizes those factors briefly here.

While the deprivation of a person's constitutional rights constitutes irreparable harm (factor 2) and protecting a party's constitutional rights is always in the public interest (factor 4), the Court is not persuaded that Dudley has met her burden of establishing a likelihood of success on the merits of her due process claim (factor 1) and that the balance between her and Defendants tips in her favor (factor 3).

The Court reaches this conclusion based upon Dudley's failure to show—even assuming she has a property interest in the matters at issue—that she is being, or will be, deprived of her Fourteenth Amendment Due Process protections throughout this process; particularly in light of the fact that the process is ongoing. Once these matters reach their natural conclusion, the Court will be in a much better place to assess Dudley's due process claims.

In light of these findings, the Court will not grant Dudley's TRO as it applies to her grade or degree and it will not extend the TRO currently in place as it relates to the Student Conduct Hearing.

## VI. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. The TRO will not be extended upon its expiration this Friday, December 23, 2022. Dudley should engage in the appeals process and Defendants should hold a Student Conduct Hearing.

2. Once the administrative processes have concluded, the parties should apprise the Court and a determination regarding briefing on the Preliminary Injunction can be made.

DATED: December 22, 2022

_____
David C. Nye
Chief U.S. District Court Judge